# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN CONTRACTORS INDEMNITY COMPANY** | **PLAINTIFF/COUNTER DEFENDANT** |
| v. | Civil No. 1:18cv297-HSO-JCG |
| **REFLECTECH, INC., J&L PROPERTIES, LLC, LARRY R. WILLIAMSON,** *and* **JANIS C. WILLIAMSON** | **DEFENDANTS/COUNTER CLAIMANTS/THIRD-PARTY PLAINTIFFS/COUNTER DEFENDANTS** |
| v. | |
| **CENTURY CONSTRUCTION & REALTY, INC.** | **THIRD-PARTY DEFENDANT/COUNTER CLAIMANT** |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF/COUNTER DEFENDANT'S MOTION [40] TO STRIKE EXPERT

BEFORE THE COURT is Plaintiff/Counter Defendant American Contractors Indemnity Company's Motion [40] to Strike Expert. Plaintiff/Counter Defendant American Contractors Indemnity Company seeks to strike Defendants/Counter Claimants' expert designation of Clyde X. Copeland. Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion that the Motion [40] to Strike should be granted.

## I. BACKGROUND

This suit arises out of a construction indemnity agreement between the

parties. On August 1, 2014, Defendants/Counter Claimants Reflectech, Inc. ("Reflectech"), J&L Properties, LLC, Larry R. Williamson ("Mr. Williamson"), and Janis C. Williamson ("Ms. Williamson") (collectively "Defendants") entered into a General Indemnity Agreement ("GIA") with Plaintiff/Counter Defendant American Contractors Indemnity Company's ("ACIC") parent company, HCC Surety Group.[1] Pl. Ex. A [38-1] at 1; Pl. Ex. A-i [38-2] at 1. Defendants sought the GIA in connection with a roofing subcontract Reflectech had entered into in July 2017 with Third-Party Defendant/Counter Claimant Century Construction & Realty, Inc. ("Century") as part of the renovations to a baseball stadium at the University of Mississippi ("the Project"). Pl. Ex. B [38-15] at 10; Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1. As a condition of being awarded the roofing subcontract, Reflectech was required to obtain performance and payment bonds in favor of Century. Pl. Ex. B [38-15] at 26; Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1. The face amount of each bond was $412,360.00. Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1.

As part of its subcontract with Century, Reflectech agreed that its roofing work would be subject to final approval by the Project architect. Def. Ex. 2 [43-2] at 158. Reflectech ultimately did not receive the architect's approval for some of its work because it was unable to secure a twenty-year warranty from the manufacturer on a portion of the roof it constructed. *Id.* at 159. According to the manufacturer, Reflectech did not properly install a section of the roof and that section would have to be replaced before it would issue a warranty. *Id.* at 100.

---

[1] The GIA was executed between Defendants and "the Surety," which the agreement defines as one of several different companies, including ACIC. Pl. Ex. A-i [38-2] at 1, 3.

Reflectech agreed that the roof needed to be replaced but would not make the repairs without the payment of additional money by Century. *Id.* at 100-01. In response, Century terminated Reflectech's subcontract for default on May 10, 2018. *Id.* at 148; Pl. Ex. A-vi [38-7].

Century demanded that ACIC complete the roofing subcontract under the terms of the performance bond. Pl. Ex. A [37-1] at 2. ACIC retained an attorney and an engineering firm, Forcon International ("Forcon"), to investigate Century's claim. *Id.* at 3. Forcon and the attorney investigated the site, reviewed documentation from Century, and conducted interviews of Reflectech and Century personnel. *Id.* at 3. ACIC determined that Century's claim on the performance bond was $675,811.44. *Id.* at 4. ACIC ultimately settled Century's claim on September 28, 2018, for $412,360.00, the penal sum of the performance bond. *Id.* at 4.

ACIC also received claims on the payment bond from three of Reflectech's subcontractors and suppliers. *Id.* at 4-6. Reflectech informed ACIC that the three claimants had performed their jobs and should be paid, Def. Ex. 2. [43-2] at 42-43, and ACIC paid the three claimants a total of $53,890.91, Pl. Ex. A [37-1] at 5-6.

On September 10, 2018, ACIC filed this lawsuit seeking to enforce the GIA against Reflectech and its indemnitors and obtain reimbursement for the claims ACIC had settled, plus pre-judgment interest and associated attorneys' fees. *See* Compl. [1]. Defendants filed a Counterclaim against ACIC for breach of contract, negligence, breach of fiduciary duty, breach of duty of good faith and fair dealing,

3

and breach of constructive trust.  *See* Am. Answer [19].  Defendants also raised third-party claims against Century for breach of subcontract, negligent supervision, negligent misrepresentation, fraudulent misrepresentation, breach of duty of good faith and fair dealing, and breach of constructive trust.  *See id.*  Century filed a Motion [29] to Compel Arbitration and Stay Proceedings as to the claims between it and Defendants, and the Court granted that Motion on August 27, 2019.  Order [35] at 11.

ACIC has now filed the instant Motion [48] to Strike Expert, challenging Defendants' designation of Clyde X. Copeland, III ("Copeland"), as an expert witness at trial in the fields of construction and surety bonds.  Copeland Report [27-1] at 1.  Specifically, Defendants state that Mr. Copeland will testify "as to the adequacy of ACIC's investigation of Century's claim on Reflectech's performance bond [and] whether all the payments made on Century's claim were proper."  *Id.*  ACIC argues that Mr. Copeland is not qualified to testify as an expert in the field of surety bonds and, even if he were qualified, his proffered testimony should not be admitted because it fails to satisfy the standards of Federal Rule of Evidence 702.  Pl. Mot. [40] at 3-4.  Defendants respond that Mr. Copeland is a qualified surety bond expert whose testimony should be admitted under Rule 702.  Resp. [44] 1-3.

## II. DISCUSSION

### A. Whether Defendants' expert is qualified

ACIC asserts that Defendants' expert Mr. Copeland does not have the requisite qualifications to permit him to offer his opinions in this case.  Pl. Mot. [40] at 3.  Under Rule 702, an expert may present testimony at trial if he is qualified "by

4

knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Whether an individual is qualified to testify as an expert is a question of law." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "An expert witness's testimony should be excluded if the district court finds that the witness is not qualified to testify in a particular field or on a given subject." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (internal quotation omitted). However, Rule 702 "does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452.

Mr. Copeland states in his expert report that he will offer testimony "in the field of construction, specifically with regards to surety bonds." Copeland Report [27-1] at 1. Further, he will "provide opinions as to the adequacy of ACIC's investigation of Century's claim on Reflectech's performance bond, as well as opinions as to whether all the payments made on Century's claim were proper." *Id.* ACIC takes the position that Mr. Copeland's experience as a construction industry attorney does not qualify him as an expert in the field of surety bonds. Pl. Mem. [41] at 10. ACIC points out that Mr. Copeland has only been previously designated as an expert on two occasions, and that neither of those cases involved surety bond claims. *Id.* at 11; Def. Ex. A [40-1], Copeland Dep., at 17. Additionally, Mr. Copeland has never been employed by a surety company or received training in handling performance and payment bond claims on behalf of a construction bond surety. Def. Ex. A [40-1], Copeland Dep., at 17.

5

Defendants counter that Mr. Copeland's twenty-three-year career litigating construction matters qualifies him as an expert in surety bond claims. Resp. [44] at 1. Further, Mr. Copeland "has been a frequent speaker at construction trade organizations, [a] contributor to publications regarding the construction industry, [a] lobbyist and [a] general counsel for the American Subcontractors' Association . . . ." *Id.*

It is questionable whether Mr. Copeland's experience in the construction industry, which does not appear to involve processing surety bond claims, would minimally qualify him to render expert opinions in this case. However, the Court need not resolve this issue because even if Mr. Copeland is qualified, his testimony should nevertheless be excluded on grounds that Defendants have not shown that his opinions are based on sufficient facts and data within the meaning of Rule 702.

B.   <u>Whether the proffered expert testimony is admissible</u>

ACIC also argues that Mr. Copeland's expert testimony is inadmissible under Rule 702 because it is not based upon sufficient facts or data. Pl. Mot. [40] at 4. The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). Rule 702 permits an expert to testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)  the testimony is based on sufficient facts or data;
(c)   the testimony is the product of reliable principles and methods; and
(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gatekeepers' . . . ." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). "District courts are to make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Carlson*, 822 F.3d at 199 (quoting *Pipitone*, 288 F.3d at 243-44). "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589).

The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) (quotation omitted). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quotation omitted). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

A party seeking to introduce expert testimony must show that: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and

7

methods reliably to the facts of the case." *Carlson*, 822 F.3d at 199 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)).

In conducting the reliability inquiry, the following non-exclusive list of factors should be considered:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 593-94.

"The *Daubert* inquiry is flexible, but the proponent must establish reliability by showing that the testimony is based on reasoning or methodology that is 'scientifically valid.'" *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850-51 (5th Cir. 2015) (quoting *Moore*, 151 F.3d at 276). "The *sine qua non*, however, is whether in his courtroom presentation the expert used the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012) (quotation omitted). "Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*

*v. Joiner*, 522 U.S. 136, 146 (1997).

In this case, the Court finds that Mr. Copeland's proffered expert testimony is not admissible under Rule 702. While Defendants seek to offer his "opinions as to the adequacy of ACIC's investigation of Century's claim on Reflectech's performance bond [and] whether all the payments made on Century's claim were proper," Copeland Report [27-1] at 1, they have not shown that these opinions are based on sufficient facts or data.

In his deposition, Mr. Copeland stated that he had never visited the Project site at issue and had only interviewed Defendant Larry Williamson in forming his expert opinion. Pl. Ex. A [40-1], Copeland Dep., at 18. Further, Mr. Copeland testified that he had not reviewed ACIC's records regarding Century's claim and did not know what information ACIC's investigation of the claim discovered, because that information was not provided to him. *Id.* at 48, 52, 54-55. When asked whether a review of ACIC's file on Century's claim would be helpful in forming an expert opinion as to the adequacy of ACIC's investigation, Mr. Copeland admitted that it would be. *Id.* at 55. Yet, in their Response [44] to ACIC's Motion, Defendants do not offer any reason or explanation as to why Mr. Copeland was not supplied with the evidence of ACIC's investigation into Century's claim, nor do they claim that ACIC did not produce such information. Finally, when Mr. Copeland was asked whether he reviewed the section of the GIA governing settlements, which he opined was unconscionable, he stated that he had only "skimmed it." *Id.* at 66. As such, Defendants have not established that Mr. Copeland's testimony is

supported by sufficient facts and data, rendering his opinions unreliable. For this reason alone, his testimony should not be admitted under Rule 702.

Defendants imply in their Response [44] that Mr. Copeland will also offer testimony as to whether ACIC owed a fiduciary obligation to Defendants. Resp. [44] at 2. In addition, Mr. Copeland opined in his deposition that the GIA is "substantively unconscionable" because it defines "good faith" differently than that term is defined under Mississippi law. Pl. Ex. A [40-1], Copeland Dep. at 61-66. While Mr. Copeland's expert report is silent as to whether ACIC owed Defendants a fiduciary duty or whether the GIA is unconscionable, ACIC questioned Mr. Copeland about these issues during his deposition. *See Nichols v. Tillman*, No. 5:11cv10, 2012 WL 1934435 at *3 (S.D. Miss. May 29, 2012) (finding that discrepancies between an expert's report, discovery responses, and deposition testimony were acceptable because the opposing party had "an opportunity to investigate the basis of the [expert's] opinion in order to prepare a response."). ACIC argues that Mr. Copeland's opinions on the existence of a fiduciary duty between the parties and the unconscionability of the GIA constitute inadmissible legal conclusions.

Under Mississippi law, "whether a particular relationship gives rise to a fiduciary duty is a question of law." *Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 270 (5th Cir. 2008) (citing *Pucket v. Rufenach, Bromagen & Hertz, Inc.*, 587 So. 2d 273, 277-79 (Miss. 1991) (answering a certified question from the Fifth Circuit Court of Appeals as to whether a fiduciary duty existed between a commodities

10

broker and his customer)). Similarly, "an inquiry into whether a contract is unconscionable is a question of law." *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 439 (S.D. Miss. 2012). Rule 702 does not permit an expert witness to offer conclusions of law, which are the province of the Court to resolve. *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Therefore, Mr. Copeland's opinions that ACIC owed Defendants a fiduciary obligation and that the GIA is unconscionable are legal conclusions which constitute inadmissible expert testimony. *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06cv489, 2008 WL 3050417, at *4 (S.D. Miss. July 25, 2008) ("[T]he interpretation of principles of Mississippi law or other legal issues . . . are questions of law for the Court to resolve.").

### III. CONCLUSION

Because Defendants have not shown that their proffered expert's testimony is admissible under Federal Rule of Evidence 702, Plaintiff/Counter Defendant's Motion [27] to Strike Expert should be granted. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

11

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff/Counter Defendant American Contractors Indemnity Company's Motion [40] to Strike Expert is **GRANTED**, and Defendants/Counter Claimants' proffered expert testimony of Clyde X. Copeland, III will be excluded and will not be permitted at trial.

**SO ORDERED AND ADJUDGED**, this the 12th day of March, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE