IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN CONTRACTORS INDEMNITY COMPANY** | **PLAINTIFF/COUNTER DEFENDANT** |
| v. | Civil No. 1:18cv297-HSO-JCG |
| **REFLECTECH, INC., J&L PROPERTIES, LLC, LARRY R. WILLIAMSON,** *and* **JANIS C. WILLIAMSON** | **DEFENDANTS/COUNTER CLAIMANTS/THIRD-PARTY PLAINTIFFS/COUNTER DEFENDANTS** |
| v. | |
| **CENTURY CONSTRUCTION & REALTY, INC.** | **THIRD-PARTY DEFENDANT/COUNTER CLAIMANT** |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF/COUNTER DEFENDANT'S MOTIONS [37] [38] FOR SUMMARY JUDGMENT

BEFORE THE COURT are Plaintiff/Counter Defendant American Contractors Indemnity Company's Motions [37] [38] for Summary Judgment. Plaintiff/Counter Defendant seeks dismissal of Defendants/Counter Claimants' Counterclaim and summary judgment on its own claim against Defendants/Counter Claimants. Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion that Plaintiff/Counter Defendant's Motions [37] [38] for Summary Judgment should be granted.

I. BACKGROUND

This suit arises out of a construction indemnity agreement between the parties. On August 1, 2014, Defendants/Counter Claimants Reflectech, Inc. ("Reflectech"), J&L Properties, LLC, Larry R. Williamson ("Mr. Williamson"), and Janis C. Williamson ("Ms. Williamson") (collectively "Defendants") entered into a General Indemnity Agreement ("GIA") with Plaintiff/Counter Defendant American Contractors Indemnity Company's ("ACIC") parent company, HCC Surety Group.[1] Pl. Ex. A [38-1] at 1; Pl. Ex. A-i [38-2] at 1. Defendants sought to obtain the GIA in connection with a roofing subcontract that Reflectech had entered into in July 2017 with Third-Party Defendant/Counter Claimant Century Construction & Realty, Inc. ("Century") as part of renovations to a baseball stadium at the University of Mississippi ("the Project"). Pl. Ex. B [38-15] at 10; Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1. As a condition of awarding Reflectech the roofing subcontract, Century required Reflectech to obtain performance and payment bonds, which Reflectech in turn sought from ACIC. Pl. Ex. B [38-15] at 26; Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1. The face amount of each bond was $412,360.00. Pl. Ex. A-ii [38-3] at 1; Pl. Ex. A-iii [38-4] at 1.

As part of its subcontract with Century, Reflectech agreed that its roofing work would be subject to final approval by the Project architect. Def. Ex. 2 [43-2] at 158. Reflectech ultimately did not receive the architect's approval for some of its work because it was unable to secure a twenty-year warranty from the

---

[1] The GIA was executed between Defendants and "the Surety," which the agreement defined as one of several different companies, including ACIC. Pl. Ex. A-i [38-2] at 1, 3.

2

manufacturer on a portion of the roof it constructed. *Id.* at 159. According to the manufacturer, Reflectech did not properly install a section of the roof and that section would have to be replaced before it would issue a warranty. *Id.* at 100. Reflectech agreed that the roof needed to be replaced but maintained that it would not make the repairs without the payment of additional compensation by Century. *Id.* at 100-01. In response, Century terminated Reflectech's subcontract for default on May 10, 2018. *Id.* at 148; Pl. Ex. A-vi [38-7].

Century made demand upon ACIC to complete the roofing subcontract under the terms of the performance bond. Pl. Ex. A [37-1] at 2. ACIC retained an attorney and an engineering firm, Forcon International ("Forcon"), to investigate Century's claim. *Id.* at 3. Forcon and the attorney investigated the site, reviewed documentation from Century, and conducted interviews of Reflectech and Century personnel. *Id.* at 3. ACIC determined that Century's claim on the performance bond was $675,811.44. *Id.* at 4. ACIC ultimately settled Century's claim on September 28, 2018, for $412,360.00, the penal sum of the performance bond. *Id.* at 4.

ACIC also received claims on the payment bond from three of Reflectech's subcontractors and suppliers. *Id.* at 4-6. Reflectech informed ACIC that the three claimants had performed their jobs and should be paid. Def. Ex. 2. [43-2] at 42-43. ACIC paid the three claimants a total of $53,890.91 under the payment bond. Pl. Ex. A [37-1] at 5-6.

On September 10, 2018, ACIC filed this lawsuit against Reflectech and its

3

indemnitors, seeking to enforce the GIA and obtain reimbursement for the claims ACIC had settled, plus pre-judgment interest and associated attorneys' fees. *See* Compl. [1]. On February 13, 2019, Defendants filed a Counterclaim against ACIC for breach of contract, negligence, breach of fiduciary duty, breach of duty of good faith and fair dealing, and breach of constructive trust. *See* Am. Answer [19]. Defendants also raised third-party claims against Century for breach of subcontract, negligent supervision, negligent misrepresentation, fraudulent misrepresentation, breach of duty of good faith and fair dealing, and breach of constructive trust. *See id.* Century filed a Motion [29] to Compel Arbitration and Stay Proceedings as to the claims between it and Defendants. The Court granted that Motion on August 27, 2019, and referred the third-party claims to arbitration. Order [35] at 11.

ACIC has now filed the instant Motions [37] [38] for Summary Judgment seeking judgment as a matter of law on its Complaint [1] and on Defendants' counterclaims, respectively. On its claims against Defendants, ACIC argues that there is no genuine dispute of material fact that Defendants are bound by the terms of the GIA to reimburse it for the expenses it incurred settling the claims on the performance and payment bonds. Pl. Mot. [37] at 13. Defendants respond that summary judgment is not appropriate because there exist material fact questions as to whether the GIA is unconscionable and thus whether it is enforceable against Defendants. Resp. [43] at 2.

ACIC also contends that it is entitled to summary judgment on Defendants'

counterclaims because Defendants have failed to show that ACIC breached the GIA or any of the duties it allegedly owed Defendants. *Id.* Pl. Mot. [38] at 2. Defendants assert that there are material fact questions as to whether ACIC properly investigated Century's performance bond claim under the GIA. Resp. [43] at 2.

II. DISCUSSION

A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court

5

views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

B.  ACIC's indemnification claim against Defendants

ACIC argues that it is entitled to judgment as a matter of law on its single claim against Defendants for indemnification. Pl. Mot. [37] at 13. It asserts that there is no disputed issue of material fact that Defendants freely and voluntarily entered into the GIA, which entitles ACIC to reimbursement for the money it paid on Defendants' payment and performance bonds. *Id.* Defendants have raised in their Response [43] as their only defense to ACIC's claim that the GIA is unenforceable because it is unconscionable. Resp. [43] at 2.

It is undisputed that Mississippi law governs the issues in this case. Pl. Mem. [39] at 13; Resp. [43] at 4. In Mississippi, an unconscionable contract is "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 608 (Miss. 2014) (internal quotation omitted). There are two types of unconscionability, procedural and substantive. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). Substantive unconscionability looks to the substantive terms of the agreement, while procedural unconscionability focuses on the circumstances surrounding the agreement's formation. *Cleveland v. Mann*, 942 So. 2d 108, 114 (Miss. 2006). The party challenging the enforceability of the agreement bears the burden of showing that it is unconscionable. *Smith*, 153 So. 3d at 608.

6

1. <u>Substantive unconscionability</u>

In assessing an agreement for substantive unconscionability, courts "look within the four corners of [the] agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695, 699 (Miss. 2009). "Substantive unconscionability is proved by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Oasis Health and Rehab of Yazoo City, LLC v. Smith*, 42 F. Supp. 3d 821, 826 (S.D. Miss. 2014) (internal quotation omitted).

Defendants' argument that the GIA is substantively unconscionable is based entirely upon the testimony of their expert witness, Clyde X. Copeland, III ("Copeland"), who expressed his opinion in his deposition that the settlements provision of the GIA is unconscionable because it "takes all repercussions away from the actions of ACIC," it is on a preprinted form, and its definition of "good faith" differs from that under Mississippi law. Resp. [43] at 4. However, the unconscionability of the GIA is a question of law for the Court to resolve, and by separate order the Court has excluded Mr. Copeland's testimony. *See* Order [54].

The settlements provision of the GIA states:

> The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment, or judgment, on or in connection with any Bond or Bonded Contract. If, however, any Principal or Indemnitor desires the Surety consider adjusting, settling,

7

> prosecuting, defending, compromising, litigation, protesting, or appealing, any claim, demand, suit, aware, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:
> A. Give written notice to the Surety to this effect by certified or registered mail; and
> B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in prosecuting, defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides their own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement. The Principal and/or Indemnitor's performance of both sub-Section A and B of this Section IX shall be an absolute condition precedent to the right of the Principal and/or Indemnitor to challenge the Surety's Good Faith with respect to settlement of any claims asserted against the Surety. The Principal and/or Indemnitor's performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of Good Faith as provided herein.

Pl. Ex. A-i [38-2] at 5-6. Defendants appear to argue that the GIA's provision governing settlements is unconscionable because its terms give ACIC "the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim . . . in connection with any Bond." *Id.* at 5. However, this very same provision also allows Defendants the opportunity to protest or oppose any claim submitted to ACIC by giving written notice and providing collateral. *Id.*[2] Other than their conclusory statement that the terms of

---

[2] Mr. Williamson acknowledged that ACIC advised Reflectech that it needed to deposit $500,000.00 collateral if it wanted to protest Century's claim on the performance bond but that Reflectech chose

8

this provision "take all repercussions away from the actions of ACIC," Resp. [43] at 4, Defendants have not pointed to, nor has the Court found, any terms of the settlements provision that are so oppressive and one-sided as to render it substantively unconscionable. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Unsubstantiated assertions are not competent summary judgment evidence.").

Mississippi courts have struck down contract provisions for substantive unconscionability when there was "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Caplin Enter., Inc. v. Arrington*, 145 So. 3d 608, 615 (Miss. 2014). Such examples include limitation-of-liability clauses which unreasonably restrict a party's ability to collect compensatory damages, *Pitts v. Watkins*, 905 So. 2d 553, 557 (Miss. 2005), provisions which shorten the statute of limitations, *id.* at 558, and clauses which allow one party to pursue its claims in court but limit the other party to arbritration, *Covenant Health Rehab of Picayune, LP v. Brown*, 949 So. 2d 732, 739 (Miss. 2007), *overruled on other grounds by Estate of Moulds*, 14 So. 3d at 706. The GIA's settlements provision does not resemble any of the types of agreements which have been found to be substantively unconscionable under Mississippi law. While the GIA gave ACIC sole discretion to handle or settle claims made on its bonds, it also plainly afforded Defendants the right to challenge the validity of those

---

not to do so. Def. Ex. 2 [43-2] at 64-65; *see also* Pl. Ex. A-vii [38-8] at 2 (letter from ACIC to Defendants instructing them to deposit collateral if they wished to challenge Century's claim on the performance bond).

9

claims, and it is undisputed that Defendants elected not to do so in this case. Def. Ex. 2 [43-2] at 64-65; s*ee also Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000) (finding that "mutuality of obligation is not required for a contract to be enforceable").[3] As such, the terms of GIA's settlements provision are not substantially unconscionable.

Defendants next argue that the settlements provision is substantively unconscionable because it appears to be in a take-it-or-leave-it form. Resp. [43] at 4. Contracts of adhesion, which are usually preprinted forms and are presented on a "take-it-or-leave-it" basis, may be evidence of substantive unconscionability, but are not *per se* unconscionable. *Smith*, 153 So. 3d at 608; *see also Moulds,* 14 So. 3d at 701 ("[F]inding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable."). Here, Defendants' only evidence that the GIA was presented on a take-it-or-leave-it basis is the inadmissible testimony of their expert that the GIA was "preprinted."[4] Resp. [43] at 4. The fact that the GIA may have been on a preprinted form is not by itself sufficient evidence that it was presented on a take-it-or-leave-it basis. *Smith*, 153 So. 3d at 608 (holding that the fact that a form is preprinted is not evidence that it was presented on a take-it-or-leave-it basis). Therefore, Defendants have not

---

[3] In its Reply [49] ACIC explains that, as the Surety, it had an obligation to pay any claimants' legitimate claims and that failure to do so could have exposed it to bad faith claims. As such, collateral was required from Defendants in order to protect ACIC from possible claimant actions. *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998) ("To show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business."). ACIC has made this showing.
[4] Mr. Copeland also expressed the opinion that the GIA was take-it-or-leave-it because there was no evidence that it was negotiated. Resp. [43] at 4. As explained in the Court's Order [54], Mr. Copeland's opinions have been excluded and will not be considered.

produced sufficient evidence to create a fact question on this point, or to show that the GIA was a contract of adhesion so oppressive as to be substantively unconscionable.[5] *Id.* (declining to declare a preprinted form a contract of adhesion when party failed to show that it was presented on a take-it-or-leave-it basis).

Finally, Defendants argue that the GIA is substantively unconscionable because it employs a different definition of "good faith" than that utilized under Mississippi law. Resp. [43] at 4. The Mississippi Supreme Court has held that a contract is substantively unconscionable when it contradicts the state's statute of limitations, *Pitt*, 905 So. 2d at 558, but it does not appear to have analyzed whether defining a standard of care differently than it is defined under state law is *per se* unconscionable. However, even if this were the case, Defendants have not shown that the GIA utilizes a definition of good faith that varies in any meaningful way from the one under Mississippi law.

The GIA defines "good faith" as "honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed to be the absence of good faith." Pl. Ex. A-i [38-2] at 2. The Mississippi Supreme Court has defined good faith as "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). Bad faith requires "a showing of more than bad judgment or negligence; rather [it] implies

---

[5] Contracts of adhesion may also be analyzed under the doctrine of procedural unconscionability. *See Pridgen*, 88 F. Supp. 2d at 657. However, because Defendants cannot demonstrate that the GIA is a contract of adhesion, the Court need not analyze this issue under both types of unconscionability.

11

some conscious wrongdoing because of dishonest purpose or moral obliquity." *Limbert v. Miss. Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 998 (Miss. 2008) (internal quotation omitted). Defendants have not demonstrated, nor does the Court find, that these two definitions of good faith are substantively different. As such, Defendants' argument that the GIA's definition of good faith renders it substantively unconscionable is insufficient to withstand summary judgment.

2. <u>Procedural unconscionability</u>

Turning to Defendants' procedural unconscionability argument, this may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties, and/or a lack of opportunity to study the contract and inquire about the contract terms." *East Ford Inc.*, 826 So. 2d at 714 (internal quotation omitted). Defendants have not presented any evidence of procedural unconscionability in this case.

At Reflectech's corporate deposition, Mr. Williamson stated that the GIA was not the first indemnity agreement he had signed on Reflectech's behalf, and that the company had obtained over twenty-five bonds from ACIC and other bonding companies over the years. Def. Ex. 2 [43-2] at 20. He also testified that he and his wife were sent the agreement via mail, read it, and understood it before they signed it. *Id.* at 22; *see Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1194 (Miss. 2005) (refusing to find agreement procedurally unconscionable where party fails to claim a lack of basic education or inability to read). Defendants do not assert that they lacked a choice of surety companies with which to partner. *Entergy Miss., Inc.*,

12

726 So. 2d at 1208 (finding procedural unconscionability in a party's agreement with its energy supplier where the company was the sole supplier of electricity in the area). Finally, the GIA does not contain any small print and it includes a section defining its terms. Pl. Ex. A-i [38-2]; s*ee Cleveland*, 942 So. 2d at 108 (holding that a contract was not procedurally unconscionable when it did not contain any small print and contained an explanation for the terms used in the document).

Viewing the evidence in the light most favorable to Defendants, they have not shown that the GIA is substantively or procedurally unconscionable. Nor have they presented any other defense to ACIC's claims for indemnification. ACIC is entitled to judgment as a matter of law on its claims against Defendants and its Motion [37] for Summary Judgment should be granted.

C. ACIC's damages under the GIA

1. Reimbursement of the bond payments

ACIC seeks reimbursement for the money it paid to settle the claims on Defendants' payment and performance bonds, plus pre-judgment interest and attorneys' fees. Compl. [1] at 4. The GIA states that:

> The Surety shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith under the belief that (1) any Principal or indemnitor is or has been in default under or pursuant to this Agreement; or (2) the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed.

Pl. Ex. A-I [37-2] at 4.

13

There is no dispute that ACIC paid $412,360.00 on the performance bond and $53,890.91 on the payment bond, for a total of $466,250.91. Under the terms of the GIA it is clearly entitled to recover this amount.

2. Pre-judgment interest

In addition to reimbursement on the payments made in connection Defendants' bonds, the GIA also entitles ACIC to recover interest and attorneys' fees on the bond claims:

> The Principal and Indemnitor shall, jointly and severally, exonerate, indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, any one or more of the following: . . . the failure of any Principal or indemnitor to perform or comply with any and all of the terms, covenants and conditions of this Agreement; the enforcement of any of the terms, covenants and conditions of this Agreement; the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; . . . the prosecution or defense of any action or claim of whatsoever kind or nature in connection with any Bond or Contract . . .
>
> The Principal and Indemnitor further agree that the liability of the Principal and Indemnitor shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower,[6] calculated from the date such payment is made by the Surety.

Pl. Ex. A-i [37-2] at 3-4.

---

[6] Mississippi law does not set a maximum rate for prejudgment interest, as long as the rate is "not imposed as a penalty for wrong doing." *Bel Reo, LLC v. Lee Freyer Kennedy Crestview, LLC*, 242 So. 3d 833, 845 (Miss. 2018); *see also* Miss. Code Ann. § 75-17-7.

14

In order to determine the rate of prejudgment interest to which ACIC may be entitled, the Court sitting in diversity turns to state law. *Plantation Key Dev., Inc. v. Colonial Mortg. Co. of Ind., Inc.*, 589 F.2d 164, 170 (5th Cir. 1979). Mississippi law states that "[a]ll judgments or decrees founded on sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered." Miss. Code. Ann. § 75-17-7; *see Arcadia Farms P'ship v. Audubon Ins. Co.*, 77 So. 3d 100, 105 (Miss. 2012) (stating that § 75-17-7 governs prejudgment interest); *see also Biel Reo, LLC*, 242 So. 3d at 845 (affirming trial court's imposition of an eighteen percent prejudgment interest rate when the rate was defined by the contract between the parties). Per the terms of the GIA, which is the controlling document in this case, the payments made by ACIC on the bonds are subject to ten percent per annum interest from the time they were paid. Pl. Ex. A-i [38-2] at 4.

On September 28, 2018, ACIC paid Century $412,360.00 to settle its claim on Defendants' performance bond. Pl. Ex. A-xii [37-13]. In order to settle the payment bond claims, ACIC paid Sika Corporation $35,945.91 on July 24, 2018, APS National, Inc. $12,420.00 on August 3, 2018, and The Baxter Company $5,525.00 on August 20, 2018. Pl. Ex. A [37-1] at 4-6. To date, ten percent interest has accrued separately on these payments from the corresponding date of payment, resulting in interest accrued as follows: i) $61,854.00 on payment to Century; ii) $5,967.02 on the payment to Sika Corporation; iii) $1,962.36 on the payment to APS National, Inc.; and iv) $872.95 on the payment to The Baxter Company. The total

prejudgment interest accrued is $70,656.33. In sum, ACIC paid $466,250.91 to settle the claims on Defendants' performance and payment bonds. After applying ten percent per annum interest from the time that these claims were individually paid by ACIC, the Court finds that ACIC is also entitled to $70,656.33 in interest for a total reimbursement in the amount of $536,907.24.

3. Attorneys' fees

Under the GIA, ACIC is also entitled to recover reasonable attorneys' fees associated with settling the claims on Defendants' bonds and any action associated with the bonds. An award of attorneys' fees "must be supported by credible evidence," *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995), *as modified on reh'g* (Aug. 22, 1996), and "should not be plucked out of the air," *DynaSteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992); *see BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds County*, 912 So. 2d 436, 446 (Miss. 2005) (citing and quoting *Carter v. Clegg*, 557 So. 2d 1187 (Miss. 1990)) (stating that award of attorneys' fees should be substantiated by evidence).

While ACIC asserts that it invoiced $87,502.30 in attorneys' fees in connection with settling the claims on Defendants' bonds, it has not offered any evidence to support this claim. Pl. Mot. [37] at 5. Because the Court cannot evaluate on the present record the amount of attorneys' fees to which ACIC may be entitled, the Court will allow ACIC **thirty (30) days** from the date of entry of this Order to submit credible evidence to support its request. If ACIC elects not to submit any evidence by this deadline, the Court will not award any attorneys' fees.

D.   Defendants' counterclaims against ACIC

ACIC also seeks summary judgment on Defendants' counterclaims against it for breach of contract, negligence, breach of fiduciary duty, breach of duty of good faith and fair dealing, and breach of constructive trust. Pl. Mem. [39] at 15. It alleges that it is entitled to judgment as a matter of law on these claims because Defendants have not presented any evidence to support them. *Id.* Defendants counter that ACIC negligently handled Century's performance bond claim which breached the GIA and the various duties ACIC owed Defendants. Def. Mem. [43]. Defendants do not contend that ACIC's payments on the payment bond claims were improper. Def. Ex. 2 [43-2] at 42.

The only evidence Defendants present to support their claims against ACIC are the deposition testimonies of their expert, Mr. Copeland, and of Mr. Williamson, the corporate designee for Reflectech. Because the Court has determined that Mr. Copeland's opinions are inadmissible, Order [54], it need not consider his testimony or opinions in deciding whether to grant summary judgment. *See LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (stating that evidence submitted at summary judgment stage must be capable of being "presented in a form that would be admissible evidence"); *see also Hammond v. Coleman Co., Inc.*, 61 F. Supp. 2d 533, 542 (S.D. Miss. 1999) (granting summary judgment where party's only evidence was inadmissible expert testimony).

Besides Mr. Copeland's testimony, Defendants have introduced as evidence of their claims against ACIC the assertion from Reflectech's corporate deposition that ACIC did not investigate Century's claim "as [Defendants] had asked [ACIC] to do."

17

Def. Ex. 2 [43-2] at 30. However, when asked whether he knew what ACIC's investigation involved, Mr. Williamson admitted that he did not.[7] *Id.* at 44. Thus, Defendants' case rests solely upon Mr. Williamson's conclusory allegations that ACIC improperly investigated Century's claim on the performance bond. *See* Def. Ex. 2 [43-2] at 28. Such unsubstantiated assertions are not proper summary judgment evidence. *Forsyth*, 19 F.3d at 1533. The Court finds that ACIC carried its initial summary judgment burden on Defendants' counterclaims, and in response Defendants have not offered any material factual dispute or any legal reason why summary judgment should not be granted. ACIC's Motion [38] for Summary Judgment on Defendants' counterclaims should be granted.

### III. CONCLUSION

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff/Counter Defendant American Contractors Indemnity Company's Motion [37] for Summary Judgment is **GRANTED,** and American Contractors Indemnity Company is entitled to compensatory damages in the amount of $466,250.91 for the bond payments, plus $70,656.33 in prejudgment interest, for a total of $536,907.24 on its claims against Defendants/Counter Claimants Reflectech, Inc., J&L Properties, LLC, Larry R. Williamson, and Janis C. Williamson. Pursuant to

---

[7] In fact, Mr. Williamson testified at least three times during Reflectech's deposition that he did not know "the facts of what ACIC's investigation was on." Def. Ex. 2 [43-2] at 44.

18

Federal Rule of Civil Procedure 58, the Court will enter a separate Final Judgment for this amount, which will accrue post-judgment interest as calculated under 28 U.S.C. § 1961.  To the extent American Contractors Indemnity Company wishes to pursue its claim for attorneys' fees, it is ordered to submit credible evidence of attorneys' fees for the Court's consideration within **thirty (30) days** of the date of entry of this Order.  If Plaintiff/Counter Defendant does not submit such evidence within thirty (30) days, the Court will not award attorneys' fees.

**IT IS, FURTHER, ORDER AND ADJUDGED** that, Plaintiff/Counter Defendant American Contractors Indemnity Company's Motion [38] for Summary Judgment on Defendants' counterclaims is **GRANTED**, and Defendants/Counter Claimants Reflectech, Inc., J&L Properties, LLC, Larry R. Williamson, and Janis C. Williamson's counterclaims against American Contractors Indemnity Company are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 12th day of March, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE